UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| | : | |
| v. | : | Mag. No. 12-3083 (PS) |
| | : | |
| DHIRENKUMAR PARIKH, | : | |
| a/k/a "Ren Parikh," | : | |
| VANRAJSINH CHAVDA, | : | |
| MANAMADURAI SOMALINGAM, | : | |
| HEMANTKUMAR PATEL, | : | |
| a/k/a "Harry Patel," | : | |
| MICHELLE ALPHONSO, | : | |
| MAULIK GAJJAR, | : | |
| TIFFANY THOMAS, | : | |
| YASMIN RIVERA, and | : | |
| HEMLATA CHRISTIAN | : | |

    I, Charles Sheridan, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From in or about March 2011 through in or about May 2012, in Hudson and Middlesex Counties, in the District of New Jersey, and elsewhere, defendants,

SEE ATTACHMENT A

    I further state that I am a Special Agent of U.S. Immigration & Customs Enforcement, Homeland Security Investigations, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Charles Sheridan, Special Agent
Homeland Security Investigations

Sworn to before me and subscribed in my presence,
June 1, 2012, at Newark, New Jersey

HONORABLE PATTY SHWARTZ
U. S. MAGISTRATE JUDGE      Signature of Judicial Officer

## ATTACHMENT A

### Count One

From in or about March 2011 through in or about May 2012, in Hudson and Middlesex Counties, in the District of New Jersey, and elsewhere, defendants

> DHIRENKUMAR PARIKH,
> a/k/a "Ren Parikh,"
> VANRAJSINH CHAVDA,
> MANAMADURAI SOMALINGAM,
> HEMANTKUMAR PATEL,
> a/k/a "Harry Patel,"
> MICHELLE ALPHONSO,
> MAULIK GAJJAR,
> TIFFANY THOMAS,
> and
> YASMIN RIVERA,

did knowingly and intentionally conspire and agree with each other and others to commit an offense against the United States, that is, to utter, use, possess, obtain, accept, and receive non-immigrant visas, namely student visas, for entry into and as evidence of authorized stay in the United States, knowing that the student visas had been procured by means of false claims and statements and otherwise procured by fraud and unlawfully obtained, contrary to Title 18, United States Code, Section 1546(a), in violation of Title 18, United States Code, Section 371.

### Count Two

From in or about March 2011 through in or about May 2012, in Hudson and Middlesex Counties, in the District of New Jersey, and elsewhere, defendants

> DHIRENKUMAR PARIKH,
> a/k/a "Ren Parikh,"
> VANRAJSINH CHAVDA,
> MANAMADURAI SOMALINGAM,
> HEMANTKUMAR PATEL,
> a/k/a "Harry Patel,"
> and
> HEMLATA CHRISTIAN,

did knowingly and in reckless disregard of the fact that aliens had come to, entered, and remained in the United States in violation of law, conspire and agree with others to conceal, harbor, and shield from detection such aliens in any place, including any building or any means of transportation, for the purpose of commercial advantage and private financial gain, contrary to Title 8, United States Code, Section 1324(a)(1)(A)(iii), in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I).

## ATTACHMENT B

I, Charles Sheridan, a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (hereinafter "HSI"), having conducted an investigation and having spoken with other individuals, have knowledge of the following facts:

1. Since at least as early as February 2011, HSI agents in Newark have been conducting an investigation into alien smuggling, alien harboring, and visa fraud activities in Iselin, New Jersey and elsewhere. During that time, agents have determined that a substantial number of illegal aliens from India and other countries have obtained legal immigration status as international students through fraudulent means and false statements.

2. The United States requires individuals from most foreign countries to obtain a visa prior to entry into the United States. A foreign citizen who wishes to enter and remain in the United States to pursue a course of study at a college, university, seminary, conservatory, academic high school, or other academic institution, or for English language training must first obtain a F-1 nonimmigrant visa. A F-1 visa is valid for the duration of status, which is as long as the foreign citizen is enrolled as a full-time student in an educational program and making normal progress toward completion of the course of study.

3. In order to obtain a F-1 visa, a foreign citizen must first apply to study at a school within the United States that has been certified by the Student and Exchange Visitor Program ("SEVP") to enroll and train foreign students. If accepted, the school will provide the foreign citizen with a "Certificate of Eligibility for Nonimmigrant (F-1) Student Status–For Academic and Language Students," also known as a Form I-20A-B ("Form I-20"). The Form I-20 is required for the foreign citizen to obtain a F-1 visa.

4. Each Form I-20 that is issued by a school to a foreign student will contain a system-generated identification number. This number is referred to as the "SEVIS ID number." The SEVIS ID number remains the same as long as the foreign student maintains his valid, original nonimmigrant status. This number will remain the same regardless of any changes or updates made by the school to the foreign student's record.

5. Every SEVP-approved school must have one Primary Designated School Official ("PDSO") who, among other things, certifies under penalty of perjury on the Form I-20 that the student's application, transcripts, or other records of courses taken, and proof of financial responsibility–including proof that the student has the funds necessary to live and study in the United States without working illegally or suffering from poverty–were received by the school and the student met the qualifications for admission. The PDSO also certifies that the student will be required to pursue a full course of study as defined by the regulations in 8 C.F.R. § 214.2(f)(6).

6. The Student and Exchange Visitor Information System ("SEVIS") is an internet-based data system that provides users with access to current information on

1

nonimmigrant foreign students, exchange aliens, and their dependents. SEVP-certified schools also are required to maintain up-to-date and accurate records in SEVIS regarding the foreign students attending the school, and are required to input accurately when students have completed their studies so that their immigration status can be terminated. The PDSO is also required to maintain up-to-date and accurate records in the SEVIS database for status events of students attending their school including, but not limited to: entry/exit data, changes of current United States address (residence), program extensions, employment notifications, changes in program of study, and completion of studies so the student's immigration status can be timely terminated.

7. Vision Career Consultants USA, Inc. ("VCC") operates as an intermediary between students and various academic institutions within the United States, by recruiting students for the institutions in exchange for a referral fee, and assisting students with the application process. Law enforcement record checks reveal that: (1) the president, owner, and registered agent of VCC is defendant Dhirenkumar Parikh ("PARIKH"); (2) VCC is located in Iselin, New Jersey; (3) and VCC was established in or around August 2009. According to U.S. Citizenship and Immigration Services ("USCIS") and confidential witnesses, Vanrajsinh Chavda ("CHAVDA"), is employed by VCC as a manager.

8. PC Tech Learning Center, LLC ("PC Tech"), is a school that was certified by SEVP to issue Form I-20s for F-1 visas on or about July 3, 2009. On or about September 28, 2011, PC Tech changed its name with SEVP to "American Health and Technology Institute" ("AHTI"), but everything else, including personnel, management, and operations, has remained the same. PC Tech/AHTI has two locations in New Jersey–one in Iselin, where it is co-located with VCC, and one in Jersey City. Record checks reveal that defendant Manamadurai R. Somalingam ("SOMALINGAM") is the CEO and PDSO of PC Tech/AHTI. According to SEVIS, defendant SOMALINGAM is the only person authorized to sign a Form I-20 issued by PC Tech/AHTI.

9. On or about March 9, 2011, Customs and Border Patrol ("CBP") officers encountered defendant CHAVDA with his wife, two individuals with F-1 visas, and two individuals with Form I-20s to attend PC Tech, at Philadelphia International Airport in Pennsylvania, arriving from Montego Bay, Jamaica. All six individuals had departed for Jamaica from Philadelphia only two days prior, on or about March 7, 2011. During an interview with HSI agents, one of the foreign citizens with a Form I-20 to attend PC Tech, "P.M.," stated, in substance and in part, that he knew he did not have legal immigration status in the United States and he had paid $3,500 to defendant CHAVDA with VCC to obtain a new Form I-20, and therefore a new SEVIS ID, to attend PC Tech in Jersey City. Similarly, during an interview with HSI agents, the other foreign citizen with a Form I-20 to attend PC Tech, "B.P.," stated, in substance and in part, that: (1) he was aware that his student status had expired; (2) defendant CHAVDA had advised him to apply for admission at PC Tech and to leave the United States and return with a new Form I-20 in order to conceal his student status violation; and (3) he paid defendant CHAVDA $3,500 for a two-day trip to Jamaica and a new SEVIS Form I-20.

10. Similarly, on or about October 19, 2011, an unnamed co-conspirator re-entered the United States at Atlanta International Airport in Georgia, arriving from Montego Bay,

2

Jamaica, with five individuals, all with Form I-20s to attend PC Tech in New Jersey. The six travelers had departed for Jamaica from Atlanta only two days prior, on or about October 17, 2011. The initials of one of the travelers was "P.P." All the travelers' tickets were purchased and booked through Travelocity.com using an e-mail address used by defendant PARIKH and a telephone number belonging to the unnamed co-conspirator.

11. Subsequently, during an interview on or about March 16, 2012, the wife of P.P. advised CBP officers, in substance and in part, that she and P.P. lived in Ohio, that P.P. worked in Ohio five days per week, and that P.P. did not attend PC Tech at all. That same day, CW-1 reported to HSI agents that P.P. had contacted VCC and that as a result of P.P.'s message, defendant CHAVDA directed VCC's employees to go sit in a classroom upstairs, where VCC shares space with PC Tech/AHTI, and pretend to be in an academic setting for fear of a visit from immigration authorities. CW-1 further stated that defendants PARIKH and CHAVDA advised P.P. not to return to New Jersey at this time.

12. As discussed above, before a SEVP-approved school issues a form I-20, the school's PDSO must certify, among other things, that the school has received proof of the foreign student's financial responsibility. Typically, such evidence takes the form of bank statements or affidavits from the foreign student's family members pledging to bear all expenses for the foreign student ("financial sponsor affidavit").

13. Sometime in or about August 2011, a cooperating witness ("CW-1") informed HSI agents that both defendants PARIKH and CHAVDA had advised CW-1 that VCC would help CW-1 apply for a F-1 student visa to attend PC Tech even though CW-1 was to work full-time for VCC. On or about September 7, 2011, CW-1 confirmed that the financial support documents submitted by VCC as part of CW-1's application to adjust CW-1's status to that of a F-1 student were fraudulent. In particular, CW-1 stated that CW-1 had never seen the financial sponsor affidavit submitted as part of CW-1's F-1 application before it was submitted to USCIS or before HSI agents showed it to CW-1; the signature of CW-1's father on the financial sponsor affidavit was forged, and CW-1's family does not have the financial means to meet the financial requirements for a F-1 student. Further review of the application has revealed that the financial sponsor affidavit included in CW-1's application has a serial number that has appeared on at least one other financial sponsor affidavit in another F-1 student application and therefore, has been identified as fraudulent. The Form I-20 in CW-1's application was to attend PC Tech/AHTI and signed by defendant SOMALINGAM.

14. Subsequently, on or about March 29, 2012, CW-1 was directed by defendant Hemlata Christian ("CHRISTIAN") to fill out and sign an attendance sheet as false evidence that CW-1 had been attending classes at PC Tech/AHTI so that PC Tech/AHTI would have the required attendance records on file for CW-1's F-1 visa. According to CW-1, defendant CHRISTIAN is employed by PC Tech/AHTI performing administrative duties, such as maintaining student files and records. In particular, defendant CHRISTIAN ensures that PC Tech/AHTI has signed attendance sheets on file for all of its foreign "students." CW-1 further explained that defendant CHRISTIAN periodically contacts the foreign "students" who do not attend classes to come to VCC to fill out attendance sheets, as defendant CHRISTIAN did with

3

CW-1, and that defendant CHRISTIAN then maintains the fraudulent attendance sheets as part PC Tech/AHTI's files so that the foreign "students" may maintain their F-1 student visa status.

15. On or about January 20, 2012, defendant Michelle Alphonso ("ALPHONSO"), filed an application with USCIS to change her immigration status to that of a F-1 nonimmigrant student in order to attend PC Tech/AHTI. The Form I-20 in defendant ALPHONSO's application was signed by defendant SOMALINGAM. As proof of her financial responsibility, defendant ALPHONSO submitted, among other things, a purported bank statement and a purported bank letter which indicated that defendant ALPHONSO's father, Charlie Alphonso, maintained a savings account with a balance equivalent to over $34,000. On or about May 18, 2012, the bank confirmed that both the bank statement and letter submitted by defendant ALPHONSO are fraudulent and that no such account exists.

16. On or about February 9, 2012, another cooperating witness ("CW-2") met with defendant CHAVDA at VCC to discuss changing CW-2's immigration status to that of a F-1 nonimmigrant student. At that meeting, which was monitored by HSI agents and recorded, defendant CHAVDA agreed to help CW-2 file an application to change his status to a F-1 student visa and to provide CW-2 with the required financial sponsor affidavits. Further, defendant CHAVDA explained that VCC would charge CW-2 $1,300 for filing the change of status application with USCIS and $300 for the fraudulent financial sponsor affidavits, for a total cost of $1,600.

17. On or about February 24, 2012, defendant Maulik Gajjar ("GAJJAR"), filed an application with USCIS to change his immigration status to that of a F-1 nonimmigrant student in order to attend PC Tech/AHTI. The Form I-20 in defendant GAJJAR's application was signed by defendant SOMALINGAM. As proof of his financial responsibility, defendant GAJJAR submitted, among other things, a purported bank letter which indicated that defendant GAJJAR maintained a savings account with a balance equivalent to over $37,500. On or about May 15, 2012, the bank confirmed that the bank letter submitted by defendant GAJJAR is fraudulent.

18. On or about May 17, 2012, another cooperating witness ("CW-3"), at the direction of HSI agents, went to PC Tech/AHTI's location in Jersey City, New Jersey, to inquire about obtaining F-1 visa status. After CW-3 informed an individual working at AHTI Jersey City that CW-3 would need a financial sponsor affidavit in addition to help with obtaining a F-1 visa, CW-3 was introduced to defendant Tiffany Thomas ("THOMAS"). When CW-3 told defendant THOMAS that CW-3 needed help obtaining a financial sponsor, defendant THOMAS led CW-3 into defendant THOMAS's office and stated, in substance and in part, that providing an affidavit of support or bank statements is "illegal," so CW-3 should not say it so loudly "because we don't want any problems." Defendant THOMAS also stated that she would work with CW-3.

19. Through a number of telephone calls beginning on or about May 19, 2012, CW-3 telephoned PC Tech/AHTI in Jersey City to try to schedule a follow-up meeting with defendant THOMAS. During one of the telephone calls, CW-3 spoke to defendant Yasmin Rivera

4

("RIVERA"), who stated, in substance and in part, that defendant THOMAS had told defendant RIVERA about CW-3. Later that day, after CW-3 asked how much the financial documents would cost, defendant RIVERA informed CW-3, in substance and in part, that the financial documents would cost $400.

20. On or about May 25, 2012, CW-3 met with defendant RIVERA at AHTI in Jersey City. During that meeting, defendant RIVERA informed CW-3, in substance and in part, that the fees for the F-1 visa application and SEVIS forms were $1,300, defendant RIVERA would be preparing the bank statement for CW-3 that same day, and the bank statement would cost an additional $400. CW-3 paid defendant RIVERA $400.

21. CW-1 also advised HSI agents that VCC also offers students something referred to as the "bridge program," for approximately $2,500 to $5,000. Because students in India are only required to complete three years of college level courses in order to obtain the equivalent of a bachelor's degree, they need to take an additional year of courses, which costs approximately $10,000, before they may attend a master's level program in the United States. In order to save the cost of an additional year of course work, students pay defendant PARIKH and his co-conspirators to create false documents to make it appear as if the student has met the requirement of one additional year of course work.

22. On or about September 3, 2011, an individual, S.P., told CW-1, in substance and in part, that approximately five months earlier, S.P. paid defendant PARIKH approximately $2,000 in exchange for a letter bearing a dean's signature, which fraudulently confirmed that S.P. had completed the required credits in order for S.P. to be able to enroll in the Master's program. S.P. explained to CW-1 that sometime in or about March 2011, S.P. asked defendant PARIKH for assistance with obtaining some kind of "waiver" of the bridge courses. S.P. further stated that S.P. originally went to defendant CHAVDA for assistance with the bridge program but that defendant CHAVDA sent S.P. to defendant Hemantkumar Patel, a/k/a "Harry Patel" ("H. PATEL"), and that it was defendant H. PATEL who actually did the job for S.P.

23. On or about September 26, 2011, CW-1 informed HSI agents that she had overhead a potential student speaking to defendant H. PATEL about VCC's bridge program. Defendant H. PATEL informed the student that the student would have to pay $2,500 for this service.

24. Similarly, on or about September 27, 2011, CW-1 witnessed defendant PARIKH speaking to a different student, "A.P.," regarding the bridge program. Defendant PARIKH told A.P., in substance and in part, that defendant PARIKH would help A.P. for $3,000 and directed A.P. to speak to defendant H. PATEL further about the bridge program. On or about October 5, 2011, in the presence of CW-1 at VCC, A.P. did in fact speak to defendant H. PATEL about having A.P.'s course requirements waived for a fee, a/k/a the "bridge program," as directed by defendant PARIKH.